Joseph Shanik, Landlord, Appellant, *v.* Edward Eckhardt, Tenant, Respondent.

(Supreme Court, Appellate Term, Second Department, May, 1920.)

Statutes — construction of — summary proceedings — evidence — trial — landlord and tenant — pleading — Laws of 1920, chaps. 130-139.

The statutes (Laws of 1920, chaps. 130–139, both inclusive) relating to landlord and tenant in the city of New York are all *in pari materia,* and as they all took effect on April 1, 1920, will be construed together.

Chapter 139 of the Laws of 1920, the language of which is simple and clear, relates only to summary proceedings based on non-payment of rent, and in the provision of section 2-a thereof, which declares that such proceedings shall not be maintainable unless the petitioner alleges and proves that the rent of the premises described in the petition is "no greater than the amount paid by the tenant for the month preceding the default for which the proceeding is brought *or* has not been increased more than twenty-five per centum over the rent as it existed one year prior to the presentation of the petition," the word "or," italicized above, means "or," not "and."

Upon the trial of such a proceeding the landlord alone was sworn and after testifying that the rent demanded was an increase of about forty-seven per cent over the rent for the preceding year, that the tenant had paid the increased rental for the last two months but had refused to pay it for the third month, made uncontroverted proof of certain items of annual charges against the property. The tenant gave no testimony that the increased rent was unjust, unreasonable and oppressive, but stood upon the legal presumption raised by the statute (Laws of 1920, chap. 136) that the rent demanded was excessive because it had been increased more than twenty-five per cent over the rent of a year ago. *Held,* that the presumption that the tenant had pleaded as a defense under chapter 132 of the Laws of 1920 that the increased rent was unjust, unreasonable and oppressive was rebutted by the undisputed testimony of the landlord and that the defense had failed.

> *Held,* further, that a final order dismissing the petition of the landlord who, during the trial, had been allowed to amend his petition by substituting for the word " or " the word " and " after the words " is brought " will be reversed and a new trial granted to give the tenant an opportunity of proving that the rent demanded was unjust, unreasonable and oppressive.

APPEAL by landlord from a final order of the Municipal Court of the city of New York, borough of Brooklyn, seventh district, dismissing his petition in summary proceedings.

Richards, Smyth & Conway (Albert Conway, of counsel), for landlord, appellant.

Tenant, respondent in person.

Abraham J. Halprin, *amicus curiæ.*

CLARK, J. Appeal from a final order in summary proceedings, dismissing the landlord's petition, in which the possession of demised premises was demanded for non-payment of rent. The petition, verified April 17, 1920, and filed April 19, 1920, alleges that on or about February 15, 1920, the landlord and tenant entered into an agreement, by the terms of which the tenant hired the premises for one month and one month only, and promised to pay the landlord the sum of twenty-eight dollars a month, payable monthly in advance, on the fifteenth day of each month thereafter, during the occupancy, for the use and occupation thereof, and thereupon entered upon the occupation of said premises. The petition further contains the following clause: " The Petitioner further alleges that the rent of the premises described herein is no greater than the amount paid by the Tenant for the month preceding the default for which this proceeding is brought; and has not been increased more than 25 percentum over the rent as it existed one year prior to the

time of the commencement of this proceeding." During the trial the landlord was allowed to amend his petition by substituting for the word " and " (following the words " is brought ") the word " or." Continuing, the petition alleges that, on April 15, 1920, there was due to the landlord under and by virtue of said agreement the sum of twenty-eight dollars for one month's rent of the premises from April 15, 1920, to May 14, 1920; that the rent had been demanded from the tenant personally since it became due; that the tenant had made default in the payment thereof, and that he held over without the permission of the landlord after such default. April 19, 1920, there was issued a precept for non-payment of rent, returnable April 23rd. Endorsed upon the petition, over the signature or initials of one of the justices of the Municipal Court, appear these words: " The tenant answers: General denial. Excessive Rent. April 23, 1920; " also the following " Word ' and ' amended to read ' or ' in line 21 of petition. April 28/20." The proceeding was tried April twenty-eighth, and, on May fifth, judgment by final order was rendered, dismissing the petition.

Upon the trial the landlord alone was sworn. He testified that the rent of the premises one year ago was $19 a month; that the rent demanded is $28 per month (an increase of about forty-seven per cent); that the tenant had paid $28 for the last two months, but refused to pay $28 for the third month. After proving the above essential facts, which were not controverted, the landlord testified to the cost of the property, to mortgages thereon, to the amount of janitor's wages, taxes, fire insurance premium, liability insurance premium, to the cost of repairs, coal and electric light, to fees paid for collecting rents and as to depreciation. The above items, with others here omitted, are claimed

by the landlord to show annual charges against the property (in which is included ten per cent on the value of the landlord's equity) of $7,545, as against present rentals of $6,646; leaving an apparent deficit of $899. No attempt was made by the tenant to contradict or to put in issue any of the above facts to which the landlord had testified. The trial concluded as follows: " The Court [to the tenant]: Have you anything to say? The Tenant: I have nothing to say. The Court: He admits the rent a year ago was $19. That is all you have to say, isn't it? The Tenant: Yes, sir. The Court: Do you know anything about the rents in the neighborhood? The Tenant: No, sir. The Court: Why do you claim the rent is excessive? The Tenant: I think it is against the law; that is all. The Court: Your only position is because the law says, as you think, that you will not have to pay more than twenty-five per cent more? The Tenant: I don't know. The Court: I will reserve decision. Mr. Richards: If your Honor is going to raise that other question, may I ask that the petition be amended to allege the word ' or ' instead of ' and '; not more than twenty-five per cent or not more than was paid last month. [Amendment allowed.]''

Although the tenant will be presumed to have pleaded in effect, as a defense under chapter 132 of the Laws of 1920, that the increased rent was unjust, unreasonable and oppressive, he gave no testimony in support of such defense, but stood upon the legal presumption, raised by chapter 136 of the Laws of 1920, that the rent was excessive, because it had been increased more than twenty-five per cent over the rent of one year ago. The undisputed testimony of the landlord rebutted this presumption, and the defense failed.

This appeal presents an issue of law, involving

primarily the construction of chapter 139, Laws of 1920, subdivision 2a, which reads in part as follows: " No (summary) proceeding * * * shall be maintainable to recover the possession of real property, * * * unless the petitioner alleges in the petition and proves that the rent of the premises described in the petition is no greater than the amount paid by the tenant for the month preceding the default for which the proceeding is brought *or* has not been increased more than twenty-five per centum over the rent as it existed one year prior to the time of the presentation of the petition." This chapter (139) relates only to summary proceedings based on the non-payment of rent. The controversy is still further narrowed to the question, whether the word " or," italicized above, must be read " and." At the last session of the legislature of the state of New York there were passed ten separate laws (Laws of 1920, chaps. 130–139, both inclusive) relating to the subject of landlord and tenant. These laws are all *in pari materia*; they all took effect the same day, April 1, 1920, and should be construed together. Upon this appeal the constitutionality of these laws has not been questioned.

Chancellor Kent, in his Commentaries (Vol.1, p. 462), says: " The words of a statute, if of common use, are to be taken in their natural, plain, obvious and ordinary signification." In *Waller* v. *Harris,* 20 Wend. 555, 561, Mr. Justice Bronson writes: " Except in relation to a few old statutes which were long since overwhelmed by commentaries and decisions, the current of authority at the present day is in favor of reading statutes according to the natural and most obvious import of the language without resorting to subtle and forced constructions for the purpose of either limiting or extending their operation. Courts cannot correct what they may deem either excesses or omissions in

legislation, nor relieve against the occasionally harsh operation of statutory provisions, without the danger of doing vastly more mischief than good." In *People* v. *Purdy,* 2 Hill, 31, 36, Mr. Justice Bronson again records his reluctance to look beyond the words of the Constitution of the state, for the purpose of construing it, " where the language is so plain and explicit that it is impossible to make it mean more than one thing, unless we first lose sight of the instrument itself and allow ourselves to roam at large in the boundless field of speculation."  To the same effect writes Paige, Senator, in *Purdy* v. *People,* 4 Hill, 384, 398, in reference to the doctrine of strict construction: " If courts are allowed to depart from it, and venture upon the perilous experiment of substituting, for the clear language of the instrument, their own notions of what it ought to have been or what its framers intended, there will be an end of written constitutions, and of all attempts to fix limits to legislative and judicial power."  Emphasizing the rule that, in the interpretation of a statute, courts should primarily scrutinize the words of the statute itself, Johnson, J., in *Newell* v. *People,* 7 N. Y. 9, 97, says: " Whether we are considering an agreement between parties, a statute or a constitution, with a view to its interpretation, the thing we are to seek is, *the thought which it expresses.* To ascertain this, the first resort in all cases is to the natural signification of the words employed, in the order and grammatical arrangement in which the framers of the instrument have placed them.  If thus regarded the words embody a definite meaning, which involves no absurdity, and no contradiction between different parts of the same writing, then that meaning apparent upon the face of the instrument is the one which alone we are at liberty to say was intended to be conveyed.  In such a case there is no room for

construction.'' In *McCluskey* v. *Cromwell,* 11 N. Y. 593, 601, Allen, J., accentuates the need of seeking the intent of the framers of a statute in the statute itself, in these words: '' It is beyond question the duty of courts in construing statutes, to give effect to the intent of the law-making power, and seek for that intent in every legitimate way. But in the construction, both of statutes and contracts, the intent of the framers and parties is to be sought, first of all, in the words and language employed, and if the words are free from ambiguity and doubt, and express plainly, clearly and distinctly, the sense of the framers of the instrument, there is no occasion to resort to other means of interpretation. It is not allowable to interpret what has no need of interpretation, and when the words have a definite and precise meaning, to go elsewhere in search of conjecture in order to restrict or extend the meaning.'' In *People ex rel. Bockes* v. *Wemple,* 115 N. Y. 302, 307, Judge Gray recognizes the rule that statutes are to be interpreted according to their expressed intent, adding: '' It is only where the literal acceptation of the words used will work a mischief, or some absurd result, or where some obscurity in the sense compels it, that we need resort to extrinsic aid of interpretation. The intent of the legislature is to be sought, primarily, in the words used, and, if they are free from ambiguity, there is no occasion to search elsewhere for their meaning.''

*Horn* v. *Klugman,* 112 Misc. Rep. ——, is now under advisement in this court, upon appeal from a final order in a summary proceeding, dismissing the petition of the landlord. That appeal likewise turns upon the interpretation of the same word '' or,'' which the learned justice in the Municipal Court has construed to mean '' and,'' although stating, in his opinion,

that " the language of the amendment is not ambiguous and should receive natural and logical construction."

There is no doubt that, in the construction of statutes, " and " is sometimes substituted for " or." As already shown, however, no reason exists for such substitution where ambiguity is absent. The language of chapter 139 is simple and clear. It prohibits the maintenance of summary proceedings for default in the payment of rent, where the landlord is not in a position to allege and prove at least one of two facts, namely, either that the rent demanded is no greater than the rent paid for the month preceding the default, or that the rent demanded has not been increased more than twenty-five per cent over the rent of a year ago. If the landlord shall prove either alternative, he is entitled, subject to the establishment of such defenses as may be duly interposed, to prevail. In the period of one year conditions may materially change; a building may be substantially repaired or remodeled at large expense; such changes may in fact be made even on the demand of tenants or with their assent. Such improvements may have been completed to the satisfaction of existing tenants a few months before April 1, 1920, and the tenants may voluntarily have paid increased rentals, amounting to even more than twenty-five per cent over the rents paid by them the year before. In such circumstances it would not seem unreasonable or unjust to allow the landlord the increased rents so paid for the preceding month. In offering two alternatives to the landlord, the legislature may have had in mind conditions thus depicted. From another point of view, assume that a tenant, a year before the filing of the petition, was paying rent at the rate of twenty dollars a month and continued to pay rent at that rate for twelve months; assume further that, at the expiration of the twelve months, the land-

lord demanded an increased rental of one dollar per month. Under a conjunctive construction of " or " in chapter 139, such increase, although far below twenty-five per cent of the rent demanded a year ago, might not be sustained because it would be greater than the rent paid by the tenant for the previous month.

To hold that " or " means " or " blunts no weapon of defense, with which recent legislation, " under stress of prevailing conditions," has armed tenants. Thus, if it be made to appear, in a summary proceeding for default in the payment of rent, that the rent demanded is more than twenty-five per cent greater than the rent paid the year before, or is greater than the rent paid for the preceding month, and nothing more be proved by either party, the landlord fails, because he has established neither of the two alternatives. If the landlord shall establish either alternative, the tenant may nevertheless plead and prove any new matter, constituting a legal or equitable defense or counterclaim (chap. 132), including the defense that the rent demanded is unjust, unreasonable and oppressive. Chap. 136. At the outset, such last defense raises the legal presumption that the rent sought to be recovered is unjust. Chap. 136, § 2. Upon the issue thus presented the way is open to the tenant to prove whatever unjust rental he may assert, even if it appears that the rent demanded does not exceed either of the two limits presented in the alternative by chapter 139. If the landlord secures a final order in summary proceedings on the ground that the tenant holds over after the expiration of his term, without the permission of the landlord, the court, upon the application of the tenant, may, after a hearing and upon certain conditions, stay the issuance of the warrant and the collection of costs for such period, not more than twelve months, as the court, in its discretion, may deem

proper. Chap. 137. If the landlord shall bring an action for rent, chapter 136 specifically provides that the tenant may plead as a defense that the rent demanded is unjust and unreasonable. If, after waiting six months (Code Civ. Pro. § 1504), the landlord shall sue in ejectment, upon the ground that the tenant holds over either after the expiration of the term or after default in the payment of rent, the tenant may set up as a defense or counterclaim any state of facts which may be pleaded as a defense or counterclaim in a summary proceeding. Chap. 135.

Final order reversed, with ten dollars costs to the appellant to abide the event, and new trial granted, to give to the tenant the opportunity of proving that the rent demanded is unjust, unreasonable or oppressive.

KELBY and CROPSEY, JJ., concur.

Final order reversed, with ten dollars costs to appellant to abide event, and new trial granted.